# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KENT E. LINDEMUTH (01),

    Defendant.

Case No. 16-40047-01-DDC

## MEMORANDUM AND ORDER

    This matter comes before the court on defendant Kent E. Lindemuth's Motion to Dismiss and in the Alternative to Sever Count 117. Doc. 76. In his motion, Mr. Lindemuth asserts four arguments why the court should dismiss or sever Count 117: (1) the charge fails to state a crime as a matter of law; (2) prosecuting him on this charge violates an oral agreement between the government and defendant; (3) the charge is improperly joined in the Superseding Indictment; and (4) the joinder of the offense is prejudicial to the defendant. *Id.* The government filed an Opposition to the Motion. Doc. 79. On July 24, 2017, the court held a hearing and ruled on all of defendant's arguments except his second one. This order decides the portion of Mr. Lindemuth's motion relying on a purported oral agreement not to prosecute.

    In brief, Mr. Lindemuth contends that his oral agreement with the government bars the government from prosecuting him on Count 117. *See* Doc. 79 at 5. The court also has received a "Joint Stipulation of Facts" filed and signed by Mr. Lindemuth. Doc. 87. The prosecutor confirmed at the July 24 hearing that, indeed, the United States had stipulated to the facts presented in Doc. 87. *See* Doc. 85 at 2. On August 8, 2017, the court held an evidentiary hearing to hear any additional evidence about this oral agreement. Neither party offered any.

Also, the court heard oral argument and now is ready to rule. For reasons explained below, the court denies defendant's Motion to Dismiss, but grants defendant's Motion to Sever Count 117.

## I.   Factual Background

On June 1, 2016, a federal grand jury indicted Mr. Lindemuth on 103 counts of bankruptcy fraud in violation of 18 U.S.C. §§ 152(1)–152(2). Doc. 1. The indictment charges that defendant fraudulently concealed 103 firearms from his creditors during a bankruptcy proceeding. *Id.* On December 12, 2016, the court set a trial date for May 9, 2017. Two days later, a grand jury indicted Mr. Lindemuth on 12 additional counts charging additional acts of bankruptcy fraud, money laundering, receipt of ammunition while under indictment, and receipt of firearms while under indictment. Doc. 32. Soon after, the government claims, law enforcement officials learned that Mr. Lindemuth allegedly possessed more firearms and he had stored them in a safe on one of his Topeka properties.

### A.   The December Hearing

At a bond revocation hearing on December 27, 2016, Mr. Lindemuth claims that the parties entered into an oral agreement about the newly discovered firearms, and the court reporter recorded the agreement contemporaneously. According to the parties' stipulation, an Assistant United States Attorney advised the court as follows:

> We've asked the defense to provide us a combination to the safe so that we can assure an inventory and we can secure the firearms. And I have advised them, and I will say it on the record, that if they voluntarily turn the contents of the safe over I will not prosecute him for those firearms.

Doc. 79 (citing Tr. of Revocation Hr'g at 18).

2

### B. After the December Hearing

On January 3, 2017, the prosecutor emailed Mr. Babbit, one of Mr. Lindemuth's attorneys. His message asked Mr. Babbit: "Have you supplied Agent Gentine with the combination yet? If not please explain why!" Doc 87 at 2. On January 6, 2017, Mr. Babbit responded:

> Rich, We have 3 or 4 combinations that may work on the wall safe at 200 S.W. Jackson. I propose that Mr. Alvey simply ask Mr. Hendershot to assist him in checking on the safe and, if a combination works, any guns inside can be moved to the storage units for inventory along with the rest of the firearms. The inventory process is scheduled to continue[] beginning Wednesday of next week so that is when I would expect Mr. Alvey and Mr. Hendershot could address the matter. If you wish Mr. Gentine involved as well or in place of Mr. Hendershot that is fine. Given Mr. Hendershot's current involvement in the inventory process, it makes sense to us for him to assist Mr. Alvey.

*Id.* The next day, the prosecutor responded:

> Kevin, thanks for the update! I am presently in trial with Scott which is presently occupying all of our time. I spoke with Randy about the safe issues and learned that he has been in contact with your investigator and it makes sense for them to jointly attempt to execute access and inventory the firearms in the vault.

*Id.*

About two months passed before the parties communicated again about matters relevant to this motion. Then, on March 2, 2017, the government sent another email to Mr. Babbit. It stated: "The combinations which were provided do not allow the safe to be opened. Accordingly, please provide us with a good combination or obtain from your client authority to allow the government to force the opening of the safe." *Id.* Mr. Babbit did not respond to the prosecutor, and the prosecutor did not follow up with him. Doc. 76 at 5; Doc. 87 at 2.

The government then secured a search warrant authorizing law enforcement to access Mr. Lindemuth's safe unilaterally. On April 12, 2017, the government executed that warrant and allegedly found the firearms relied on in Count 117. Doc. 87 at 2.

On May 3, 2017, the grand jury returned a Third Superseding Indictment against Mr. Lindemuth. *See* Doc. 71. It charges Mr. Lindemuth with Count 117, receipt of firearms while under indictment in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D). *Id.* On May 8, 2017, at defendant's request, the court continued the trial date until September 12, 2017. Doc. 73 at 1 (granting Mr. Lindemuth's motion, Doc. 66).

## II.     Analysis

Mr. Lindemuth claims that the court should dismiss or sever Count 117. The dismissal aspect of his motion claims the government violated the terms of an oral agreement not to prosecute. The government responds, arguing that Mr. Lindemuth materially breached the agreement by failing to provide access to the safe and firearms within a reasonable time. The government also contended—at least initially—that the court must submit this issue to the jury and let it decide the question.

### A.     The Court's Capacity to Decide This Issue

Before considering whether Mr. Lindemuth materially breached the terms of any agreement not to prosecute, the court addresses the government's argument that this question is one that a jury must decide. The government cites a decision from the Eastern District of New York, *Lia v. Saporito*, for the proposition that juries should resolve questions of fact in breach of contract claims. Doc. 79 at 10 (citing 909 F. Supp. 2d 149, 162–63 (E.D.N.Y. 2012)). While contract law principles apply to claims that the government has breached an agreement not to prosecute, the court concludes that the question here is one for the court to decide.

Several circuits have addressed similar issues. *See, e.g.*, *United States v. Pinter*, 971 F.2d 554, 557 (10th Cir. 1992) (citing *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir. 1983) ("[A] cooperation agreement is analogous to a plea bargain, and therefore the same analysis applies to

4

both types of agreements.")). In *United States v. Calabrese*, the Tenth Circuit outlined the procedure district courts must use to resolve a claim in a criminal case that an adverse party has breached a pretrial agreement:

> If the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of law.

645 F.2d 1379, 1390 (10th Cir. 1981).[1] In *United States v. Brown*, the Eighth Circuit applied similar principles to an alleged breach of a cooperation agreement. 801 F.2d 352, 355 (8th Cir. 1986). It held that the district court had erred by failing to hold an evidentiary hearing to determine if the defendant had breached the cooperation agreement. *Id.* ("Because [defendant] raised a factual dispute on the issue of breach, on remand the district court should hold an evidentiary hearing and determine whether [defendant] breached the cooperation agreement."). And, a Seventh Circuit case reached the same conclusion, holding "that a defendant is entitled to a pretrial hearing under the due process clause to determine if, in fact, a breach [of a pretrial agreement] occurred." *United States v. Ataya*, 864 F.2d 1324, 1330 (7th Cir. 1988).

In sum, these authorities convince the court that determining this dispute is work assigned to the court, and not the jury. The court thus rejects the government's position and now turns to the substance of the breach claimed by Mr. Lindemuth.

---

[1] The *Calabrese* holding is broader than the court discusses here. There, the Circuit rejected the idea that the government has the power to decide whether a defendant has breached a plea agreement. Instead, *Calabrese* held that "a judicial determination, based on adequate evidence" must resolve alleged breaches of a plea agreement. 645 F.2d at 1390. But this holding is not implicated here because the government readily acknowledges that some form of judicial proceeding must adjudicate the question presented by Mr. Lindemuth's motion.

**B. Choice of Law**

As addressed below, the court must apply principles of contract law to decide Mr. Lindemuth's motion. State law typically governs contract disputes so the court must determine, first, which state law to apply. In criminal cases, this court exercises federal question jurisdiction under 28 U.S.C. § 1331. When federal question jurisdiction is invoked, "federal courts generally apply federal common law principles to resolve choice of law disputes." *Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 62 (D.D.C. 2002) (citing *Alvarez–Machain v. United States,* 266 F.3d 1045, 1061 (9th Cir. 2001); *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1458, 1463–64 (D.C. Cir. 1995)). "Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id.*

The Second Restatement provides that "[i]f the place of negotiating the contract and the place of performance are the same, the local law of the state will usually be applied . . ." Restatement (Second) of Conflict of Laws § 188(3) (1971). Here, the parties agree. Any agreement was negotiated inside the Frank Carlson Federal Building in Topeka, Kansas. They also agree that the defendant would have performed the agreement by providing access to a safe located in Topeka, Kansas. The court thus applies Kansas contract law.

**C. Defendant's Alleged Breach of the Immunity Agreement**

When determining breaches of immunity and plea agreements, courts apply "general principles of contract law." *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998); *see also United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992) ("An agreement not to prosecute is contractual in nature, and subject to contract law standards."); *Calabrese*, 645 F.2d at 1390 ("Courts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process.").

Due process considerations require the government to adhere to any plea bargain or immunity agreement it makes. *Cabral v. Hannigan*, 5 F. Supp. 2d 957, 962 (D. Kan. 1998) (citing *United States v. Pelletier*, 898 F.2d 297, 302 (2nd Cir. 1990)) (additional citations omitted). As with any contract, a material and substantial breach committed by one contracting party may free the other of its obligations under the contract. And, more specifically, a defendant's material breach of an immunity agreement frees the government of its obligations under that agreement. *Fitch*, 964 F.2d at 574. The government bears the burden of proving that: "(1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission." *Castaneda*, 162 F.3d at 836; *see also Calabrese*, 645 F.2d at 1390 ("[T]he government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable.").

For reasons explained below, the court finds that the government and Mr. Lindemuth never formed a binding agreement. And, even if they formed an agreement, Mr. Lindemuth's undue delay in complying with it constitutes a material breach. His breach freed the government of any obligations arising from the oral agreement Mr. Lindemuth alleges.

        *1.     No Binding Agreement*

The stipulated facts present a threshold question: Did the prosecutor offer a bilateral or unilateral contract? On issues of contract formation, the Kansas Supreme Court looks to the Second Restatement of Contracts. *Unified Sch. Dist. No. 446 v. Sandoval*, No. 101,145, 2012 WL 4490832, at *1 (Kan. Aug. 31, 2012) (citing Restatement (Second) of Contracts § 22(1) (1981)). Traditionally, an offer for a unilateral contract requires an act by the offeree to form a binding contract. 2 Williston on Contracts § 6:2 (4th ed.). The Restatement explains that "[a]n offer may invite or require acceptance to be made by an affirmative answer in words, or by

performing . . . a specific act . . ." Restatement (Second) of Contracts § 30(1) (1981). The Restatement recognizes that some doubt exists whether a promise to perform constitutes acceptance, or whether, instead, the offeree must perform to accept. *Id.* § 32. It provides:

> Language or circumstances sometimes make it clear that the offeree is not to bind himself in advance of performance. His promise may be worthless to the offeror, or the circumstances may make it unreasonable for the offeror to expect a firm commitment from the offeree. In such cases, the offer does not invite a promissory acceptance, and a promise is ineffective as an acceptance.

*Id.* § 32 cmt. b. When "language or circumstances" indicate that a promise by the offeree—here Mr. Lindemuth—is worthless to the offeror, the offeree can accept only by performance. *Id.* § 50 cmt. b.

These Restatement principles are illustrated in *United States v. Papaleo*, 853 F.2d 16 (1st Cir. 1988). In *Papaleo*, the First Circuit considered whether the government unilaterally could withdraw from a plea agreement. *Id.* at 18. The plea agreement at issue provided that "in exchange for defendant's . . . plea of guilty as to count one of the indictment, the Government at the time of sentencing will move for the dismissal of counts two and three." Defendant argued that the words of the plea agreement were ambiguous, but that the plea agreement constituted a bilateral contract and not just an offer. *Id.* at 19. However, the First Circuit held that the plea agreement merely amounted to an offer: "if the defendant pleads guilty and if that plea is accepted by the court, then the government will perform as stipulated in the agreement." *Id.* at 20. In other words, until the defendant pleaded guilty, no contract existed and the government was free to withdraw its offer.

According to the parties' stipulation here, the prosecutor offered to refrain from prosecuting Mr. Lindemuth based on the contents of the safe if he "turn[ed] the contents of the safe over" to the government. Doc. 79 at 18. So, until defendant turned the contents of the safe

over to the government, the government was free to withdraw its offer. Mr. Lindemuth never provided the government with the safe's contents or access to it.

The stipulated facts establish that the putative agreement between the government and Mr. Lindemuth is of the kind envisioned by Section 32 of the Restatement. Mr. Lindemuth's "promise [was] worthless to the offeror"—the government. § 32 cmt. b. The court finds that both the words used by of the prosecutor's offer and the circumstances surrounding it establish that Mr. Lindemuth could accept only by providing the government with access to the safe. Mr. Lindemuth never provided such access, so the court holds that Mr. Lindemuth never accepted the government's offer of an agreement not to prosecute. The absence of an acceptance freed the government of any duty to perform its side of the proposed agreement.

        2.    *Undue Delay*

This conclusion suffices to deny Mr. Lindemuth's motion. But a second, independent reason also rejects the reasoning applied by Mr. Lindemuth's motion. Namely, even if the government's offer permitted acceptance by a return promise, and even if Mr. Lindemuth had made such a promise, he failed to honor his performance.

The agreement asserted here never specified a deadline for Mr. Lindemuth to provide the government with access to the firearms. A general principle of contract law is "that where a contract does not specify the time of performance or for the occurrence of a necessary event, a reasonable time will be implied." *Navair, Inc. v. IFR Americas, Inc.*, 519 F.3d 1131, 1138 (10th Cir. 2008) (citing *Arnold v. S.J.L. of Kansas Corp.*, 822 P.2d 64, 67 (Kan. 1991)). "What is a reasonable time depends in each case on the surrounding facts and circumstances." *Singer Co. v. Makad, Inc.*, 518 P.2d 493, 500 (Kan. 1974).

In *Arnold*, the Kansas Supreme Court cited its previous opinion in *Marsh v. Brown-Crummer Inv. Co.*, 23 P.2d 465 (Kan. 1933). There, it found that the three-year statute of limitations period for an oral contract was a reasonable time in the context of that case's facts. *Arnold*, 23 P.2d at 468. But here, "the surrounding facts and circumstances" make three years far too long to constitute a reasonable time. A federal court criminal case rarely lasts three years. And the terms of the government's offer to Mr. Lindemuth implied a much shorter time. The prosecutor's offer reached just one aspect of this criminal case. He offered not to seek an indictment on any firearms derived from access to a safe. So the court declines to apply *Arnold's* three-year window here, finding it is unreasonably long in this setting.

But the court nonetheless finds *Arnold's* analytical premise useful. It counsels Kansas courts to consider timing increments used by closely-related statutes. The court has considered various alternatives. In the circumstances of a federal court criminal case, the court concludes that the federal Speedy Trial Act provides the most appropriate measuring tool. *See* 18 U.S.C. § 3161–3174 (2012). In general terms, the Speedy Trial Act requires a federal criminal trial to commence within 70 days after the later of the public filing of an indictment or the defendant's first appearance before a judicial officer. § 3161(c)(1). The government offered Mr. Lindemuth the immunity agreement on December 27, 2016. By April 12, 2017—about 106 days later—Mr. Lindemuth still had not provided the government with access to the safe. Tired of waiting, the government secured a search warrant and forcibly accessed the safe. In short, the government gave Mr. Lindemuth longer than federal statutory law gave the government to try Mr. Lindemuth on federal charges. The court finds the 106 days given Mr. Lindemuth a presumptively reasonable time period and he failed to perform his side of the bargain within it.

The court recognizes that the Speedy Trial Act's 70-day measurement is not a perfect fit. After all, its deadline only applies once the government has charged a defendant. But Kansas law suggests a law-based measurement and using the clock adopted by this federal act complies with the spirit of the Kansas approach.

Other circumstances also support the court's conclusion that Mr. Lindemuth failed to perform his side of the putative bargain within a reasonable time. When the prosecutor made the offer on December 27, 2016, he faced a May 9, 2017 trial date. If Mr. Lindemuth provided access to the safe on his property, the prosecutor needed only to prepare an inventory of its contents and secure any firearms located inside the safe. But, if Mr. Lindemuth did not provide access, the prosecutor had more work to do. He had to gain access by other means, determine what was in the safe, and decide whether to seek additional charges based on those contents. In early April 2017—almost 100 days after the prosecutor made his offer—Mr. Lindemuth still had not provided access. Mr. Lindemuth never has argued that some mitigating factor explains why it took him so long. On April 12—the date when the government finally secured access to the safe via a search warrant[2]—the prosecutor faced a trial starting less than a month later. He secured access, concluded the contents might support an additional change, and then proceeded to convince the grand jury to charge Mr. Lindemuth based on those alleged contents. Doc 71. These circumstances lead the court to conclude that the government gave Mr. Lindemuth more than a reasonable time to perform his side of the bargain. He didn't.

Providing Mr. Lindemuth 100 days allowed him a reasonable time to perform his part of the putative oral agreement. So, if an enforceable agreement existed, Mr. Lindemuth materially breached it by failing to perform his obligation under it. This freed the government from

---

[2] *See* Doc. 62 at 1 (reciting date of search at defendant's property on S.W. Jackson Street).

honoring its promise not to prosecute, and the court thus denies Mr. Lindemuth's motion to dismiss Count 117.

        *3.     Severance*

As an alternative to dismissal, defendant seeks to sever Count 117 for a separate trial. Doc 76. at 7. Consistent with the court's reasoning explained during the August 8, 2017 hearing, Count 117 is severed and joined with Counts 114 and 115 for a separate trial. The court will commence the trial on those three counts promptly after the jury returns a verdict on the other counts.

## III. Conclusion

For reasons discussed above, the court denies defendant's Motion to Dismiss, but grants defendant's Motion to Sever Count 117 (Doc. 76).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Kent E. Lindenmuth's Motion to Dismiss or Alternatively Sever Count 117 (Doc. 76) is granted in part and denied in part, as set forth in this Order. The court grants the portion of the motion seeking severance and it denies the Motion to Dismiss.

**IT IS SO ORDERED.**

**Dated this 21st day of August, 2017, at Topeka, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**