IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**KENT E. LINDEMUTH (01),**

    Defendant.

Case No. 16-40047-01-DDC

## MEMORANDUM AND ORDER

    This matter comes before the court on the government's Motion to Strike (Doc. 102) and Motion in Limine (Doc. 103). Mr. Lindemuth did not respond to either motion. But, on November 14, 2017, the court held an In Limine Conference and both parties presented oral argument on the motions. The court is now ready to rule. For reasons explained below, the court denies the government's motions.

### I.    Background

    Mr. Lindemuth has ongoing bankruptcy proceedings and, it appears, his criminal charges stem from them. While in these bankruptcy proceedings, his assets are controlled by the bankruptcy Trustee. According to Mr. Lindemuth, the Trustee will not release funds from his estate to help his efforts to marshal his defense. Initially, Mr. Lindemuth believed the Trustee would release some funds so that he could retain an expert in bankruptcy law to serve as a putative expert witness at trial. With that expectation, Mr. Lindemuth located an expert in bankruptcy law who reportedly was prepared to testify. But, when the deadline to provide notice of expert witnesses arrived on October 24, 2017, the Trustee still had not released funds needed to retain the expert. So, Mr. Lindemuth filed a Designation of Expert Witness and Offer of Proof

(Doc. 100) with a Disclosure of Expert Testimony (Doc. 100-1). But, this disclosure did not name the expected expert because Mr. Lindemuth did not yet have the funds to retain him. In his Disclosure of Expert Testimony, Mr. Lindemuth disclosed the topics, generally, that the expert witness was expected to address in his testimony.

Ultimately, the Trustee did not release funds for the expert witness so Mr. Lindemuth could not retain him. Later, Neil Sader—a bankruptcy attorney who previously had represented Mr. Lindemuth in his bankruptcy proceedings—offered to testify as an expert witness on a pro bono basis. Once Mr. Sader agreed to do so, Mr. Lindemuth filed a Supplemental Designation of Expert Witness (Doc. 107), and it named Mr. Sader as the expert witness who would testify about the topics disclosed in the Disclosure of Expert Testimony. Mr. Lindemuth filed this supplement 17 days after the October 24 deadline for serving notice of expert witnesses had passed.

## II.    Analysis

Between the two motions and its presentation at oral argument, the government aims three arguments at Mr. Lindemuth's putative expert and the disclosure Mr. Lindemuth has made about him. Those arguments are: (1) Mr. Lindemuth's notice disclosing his expert was inadequate and untimely; (2) Mr. Lindemuth's expert has a disqualifying conflict of interest; and (3) Mr. Lindemuth's expert seeks to provide improper expert legal testimony. For these reasons, the government asks to strike Mr. Lindemuth's Designation of Expert Witness and Offer of Proof and exclude any expert legal testimony. The court addresses the government's three arguments below.

### A.     Inadequate and Untimely Notice

The government asserts that the court should strike Mr. Lindemuth's Designation of Expert Witness and Offer of Proof (Doc. 100) because it provides inadequate notice of Mr. Lindemuth's expert.  The government also asserts that the court should exclude the expert's testimony because Mr. Lindemuth's Supplemental Designation of Expert Witness was untimely.

Federal Rule of Criminal Procedure 16(b)(1)(C) provides, "The defendant must, at the government's request, give to the government a written summary of any [expert witness] testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial . . . This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Here, the court set the deadline for expert witness disclosure as October 24, 2017.  Doc. 92 at 1.

The government contends that Mr. Lindemuth's expert witness disclosure is inadequate and untimely.  The court will address the adequacy issue first.  "The primary purpose of Rules 16(b)(1)(B) and (C) is to prevent unfair surprise at trial and to permit the government . . . to prepare rebuttal reports and to prepare for cross-examination at trial."  *United States v. Naegele*, 468 F. Supp. 2d 175, 176 (D.D.C. 2007).  "As the Advisory Committee Note expressly states, Rule 16(b)(1)(C) is 'intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'"  *Id.* (quoting Advisory Committee Note to Fed. R. Crim. P. 16).  "The requirement that a written summary of an

expert's testimony must be provided 'is intended to provide more complete pretrial preparation by the requesting party.'" *Id.* (quoting Advisory Committee Note). "Most important, a summary of the bases of the expert's opinion must be provided." *Id.* (quoting Advisory Committee Note) (internal quotations and brackets omitted).

Mr. Lindemuth's Disclosure of Expert Testimony lacks the requisite description of the expert's opinions and the bases and reasons for them. Instead, the disclosure only provides general subjects that the witness will discuss. This disclosure does not permit the government to complete its pretrial preparation properly. Mr. Lindemuth thus has failed to meet the requirements established in Rule 16(b)(1)(C).

"Rule 16(d)(2) of the Federal Rules of Criminal Procedure allows the Court broad discretion in imposing sanctions on a party who fails to comply with a discovery order." *United States v. Jensen*, No. 1:12-CR-83 TS, 2014 WL 37353, at *1 (D. Utah Jan. 6, 2014). It provides:

> If a party fails to comply with this rule, the court may:
>
> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> (B) grant a continuance;
>
> (C) prohibit that party from introducing the undisclosed evidence; or
>
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2). "If the district court concludes sanctions are appropriate, it should impose the least severe sanction that will accomplish . . . prompt and full compliance with the court's discovery orders." *United States v. Nichols*, 169 F.3d 1255, 1268 (10th Cir. 1999) (internal quotations and citation omitted).

4

When considering the appropriate sanction for a Rule 16 violation, the court must consider three factors: "(1) the reason for the delay, including whether the non-compliant party acted in bad faith; (2) the extent of prejudice to the party that sought the disclosure; and (3) the feasibility of curing the prejudice with a continuance." *United States v. Banks*, 761 F.3d 1163, 1198–99 (10th Cir. 2014) (internal quotation and citation omitted). "[T]hese three factors should merely guide the district court in its consideration of sanctions; they are not intended to dictate the bounds of the court's discretion." *Id.* (citation omitted).

Here, the least severe sanction that will serve Rule 16's purposes is an order requiring Mr. Lindemuth to provide the requisite description of his witness's opinions and the bases and reasons for those opinions. *See Naegele*, 468 F. Supp. 2d at 176–77. In *Naegele*, the court concluded that the defendant had failed to provide the bases and reasons for his experts' opinions as required by Rule 16(b)(1)(C). *Id.* So, the court required the defendant to provide the government the underlying documents on which each of his experts had relied when reaching their opinions and conclusions. *Id.* at 177.

Similarly, here, the court orders Mr. Lindemuth to provide the government with all of Mr. Sader's opinions and the bases and reasons for those opinions. This is an appropriate sanction because it does not appear that Mr. Lindemuth has acted in bad faith. Based on Mr. Lindemuth's explanation of events, he has encountered some challenges along the way. And while the court directed him to alternatives that might have allowed him to navigate the challenges more readily, the court cannot say that he has acted in bad faith. In any event, now that Mr. Lindemuth has surmounted his challenges, he should have no problem providing the government with what Rule 16(b)(1)(C) requires. Mr. Lindemuth must provide the summary required by this rule on or before **November 27, 2017**.

By receiving the expert summary by November 27, 2017, the government will not be prejudiced. This deadline is still in advance of trial and the government's case-in-chief reportedly is extensive. This leaves the government with substantial time to prepare to cross-examine the expert.[1] A more severe sanction, *i.e.*, excluding the expert testimony or even continuing the trial, is not warranted at this time.

For these reasons, the court finds that striking Mr. Lindemuth's Designation of Expert Witness and Offer of Proof (Doc. 100) because it provides inadequate notice of Mr. Lindemuth's expert or excluding the expert's testimony because Mr. Lindemuth's Supplemental Designation of Expert Witness was untimely are unduly harsh sanctions at this time.

### B.  Conflict of Interest

Next, the government argues that the court should exclude the expert's testimony because he has a disqualifying conflict of interest. But, the government fails to provide any legal basis for this argument.

Disqualification of an expert witness for a conflict of interest is more commonly used in civil cases than in criminal ones. In the civil context, "[e]xpert disqualification may be warranted when a party retains expert witnesses who previously worked for an adversary and who acquired confidential information during the course of their employment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 304 (6th Cir. 2014) (affirming district court's decision to disqualify plaintiff's expert witness who was formerly defendant's in-house counsel) (internal quotation and citation omitted). Accordingly, to disqualify an expert witness, a "party must show:  1) a confidential relationship existed between itself and the expert, and 2) it exchanged confidential information with the expert that is relevant to the current litigation." *Allstate Ins. Co. v.*

---

[1]  The court also notes that the government did not raise the adequacy and timeliness issues until it presented oral argument at the In Limine Conference. This left Mr. Lindemuth with little time to respond to the arguments or even take its own corrective action.

*Electrolux Home Prod., Inc.*, 840 F. Supp. 2d 1072, 1078 (N.D. Ill. 2012). Even then, "[d]isqualification of an expert is a drastic measure which courts should hesitate to impose except when absolutely necessary." *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 500 F. Supp. 2d 957, 960 (N.D. Ill. 2007).

The government never asserts that Mr. Sader received confidential information from the government while they shared a confidential relationship with one another. Indeed, it asserts just the opposite—that Mr. Sader and Mr. Lindemuth shared a confidential attorney-client relationship in which Mr. Lindemuth may have shared confidential information with Mr. Sader. Even if this is so, it does not warrant disqualification. Mr. Sader's attorney-client relationship with Mr. Lindemuth does not disqualify him from serving as an expert witness here.

At the In Limine Conference, the prosecutor explained that he had raised this issue because he is concerned about Mr. Lindemuth's attorney-client privilege. That privilege belongs to Mr. Lindemuth—not the government. And, he may do with it as he wishes. Naturally, if Mr. Lindemuth acts in a way that waives any privilege he currently enjoys with his putative expert, it could expose all communications on that subject to disclosure. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 190 F.R.D. 667, 669 (D. Or. 2000) ("If a client or his attorney testifies to privileged communications, this constitutes a waiver of the attorney/client privilege as to that subject."). But, that is a consequence for Mr. Lindemuth to evaluate. The court should not make this decision for him, and certainly the United States has no right to make that decision for Mr. Lindemuth. For these reasons, the court concludes that the government has failed to establish that a disqualifying conflict of interest exists.

### C. Improper Expert Legal Testimony

Last, the government argues that expert legal testimony, generally, is improper and so the court must exclude Mr. Sader from giving any expert testimony. "The district court has broad discretion in determining whether or not to admit expert testimony." *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citation and correction omitted). Fed. R. Evid. 702 governs expert witness testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The proponent of expert testimony must show 'a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation.'" *Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR-KMH, 2014 WL 1308876, at *1 (D. Kan. Mar. 28, 2014) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999)). "In order to determine whether an expert opinion is admissible, the Court performs a two-step analysis." *Id.* "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). "To determine reliability, the Court must assess 'whether the reasoning or methodology underlying the

testimony is scientifically valid.'" *Boardwalk Apartments*, 2014 WL 1308876, at *1 (quoting *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 703 (10th Cir. 2012)). "Second, the district court must further inquire into whether the proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* (quoting *BC Tech.*, 464 F. App'x at 703).

An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). "And it is not necessary to prove that the expert is 'indisputably correct,' but only that the 'method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements.'" *Boardwalk Apartments*, 2014 WL 1308876, at *1 (quoting *Dodge*, 328 F.3d at 1222).

"*Daubert* sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community." *Boardwalk Apartments*, 2014 WL 1308876, at *2 (citing *Daubert*, 509 U.S. at 593–94). But "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted).

The Tenth Circuit addressed the specific issue of expert legal testimony in *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988). In *Specht*, the plaintiff called an attorney as a witness at trial. *Id.* at 806. The attorney was given a hypothetical set of facts and asked to make legal determinations based on those facts. *Id.* Then, the attorney/expert told the jury what standard

9

applied to the hypothetical facts. *Id.* The Circuit held that the district court erred when it admitted this evidence. *Id.* at 808. It reasoned:

> Given the pervasive nature of this testimony, we cannot conclude its admission was harmless. There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness. While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury. When an attorney is allowed to usurp that function, harm is manifest in at least two ways.
> 
> First, as articulated in *Marx & Co. v. Diners' Club, Inc.*, the jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title "expert," is more knowledgeable than the judge in a given area of the law. *Marx*, 550 F.2d at 512. Indeed, in this case, the expert's knowledge and experience was made known to the jury by both the court and counsel in a manner which gave his testimony an aura of trustworthiness and reliability. Thus, there is a substantial danger the jury simply adopted the expert's conclusions rather than making its own decision. Notwithstanding any subsequent disclaimers by the witness that the court's instructions would govern, a practical and experienced view of the trial world strongly suggests the jury's deliberation was unduly prejudiced by the expert's testimony.
> 
> Second, testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. Given the proclivity of our brothers and sisters at the bar, it can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court, *see United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986); *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 97 (2d Cir. 1983). We therefore conclude the expert's testimony on the ultimate issues of law was not harmless as contended by the dissent.

*Id.* at 808–09. But, the Tenth Circuit's holding does not mean that district courts must exclude all expert testimony offered by an attorney. *Id.* at 809. "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Id.* The witness's testimony is admissible if it focuses on a specific

question of fact and does not "invade the court's authority by discoursing broadly over the entire range of the applicable law." *Id.*

Our court has applied *Specht*'s holding to the tax code context. *Boardwalk Apartments*, 2014 WL 1308876, at *4. In *Boardwalk Apartments*, the court determined that "it would be improper for [the expert] to testify about whether [plaintiff] complied with any particular provision of the tax code on its tax returns. This would be an ultimate legal conclusion." *Id.* But, the court determined that the attorney expert could testify about common methodologies or approaches used by tax attorneys to determine how to report certain income and payments. *Id.* Because, "[s]uch testimony would allow the trier of fact to reach its own conclusion about whether the tax returns were accurate and whether they are relevant to its determination of the actual income earned by [plaintiff]." *Id.*

Applying this reasoning here, the court determines that not all expert legal testimony is improper and thus must be excluded, as the government asserts. Indeed, expert legal testimony can be helpful to the trier of fact to understand the evidence or to determine a fact in issue. *See* Fed. R. Evid. 702(a). In the context of bankruptcy law, expert testimony may help the trier of fact navigate the bankruptcy process. In some sense, the bankruptcy process resembles a complex piece of machinery that a jury might not fully grasp without the assistance of an expert. *See In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, No. 05-MD-1721-KHV, 2010 WL 934268, at *4 (D. Kan. Mar. 11, 2010) (allowing expert opinions on airplane engine performance).

While an expert in bankruptcy law might help the jury understand the facts of the case, the court still must limit his testimony to topics that allow the trier of fact to reach its own conclusion. The current record does not allow the court to draw a precise line between the

11

permissible and impermissible.  Looking ahead to the trial, expert testimony about things like common methodologies and approaches used in bankruptcy proceedings would seem permissible.  But, it would be improper to allow an expert to testify about whether Mr. Lindemuth compiled with a particular provision of the bankruptcy code while involved in his bankruptcy court proceedings.

And while the record is still relatively undeveloped on this issue, the court has substantial concerns about some of the topics that Mr. Lindemuth nominated in his Disclosure of Expert Testimony (Doc. 100-1).  The court views the proposed topics for Mr. Lindemuth's expert in three categories.  The first category includes topics that, on their face, appear relevant and potentially proper for expert opinion.  Some examples are:  (1) "[t]he process by which a Chapter 11 case is developed, filed, and typically proceeds" (¶ 2); (2) "[m]ethods available to parties to obtain discovery of information from the debtor and/or professionals retained by the debtor, relating to already disclosed assets, *e.g.*, 341 hearing, interrogatories, requests for documents, depositions" (¶ 8); and (3) "[w]hat discovery was requested and/or produced from Debtor and/or professionals retained by him relating to assets disclosed by SOFAs [Statements of Financial Affairs] and/or monthly financial reports and what ordinary or reasonably prudent parties in interest and bankruptcy professionals would have gleaned from this information" (¶ 9).  Doc. 100-1 at 1–2.

The second category includes several topics that concern the court.  *See* Doc. 100-1 at ¶¶ 12–15.  Currently, at least, the court questions the relevance of "[w]hat an ordinary lawyer skilled in bankruptcy law and procedure would have known." *Id.*  No pending motion permits (or requires) the court to decide this issue now.  But, the court advises defendant's counsel that they face a substantial hurdle in their efforts to admit opinion testimony of this kind.  The third

group of topics gives the court even more substantial pause.  An example is "[w]hat ordinary or reasonably prudent debtors, both individuals and entities, are expected to understand concerning their rights and duties in chapter 11 cases."  Id. at 2, ¶ 10.  This topic borders on the expert providing testimony about Mr. Lindemuth's thought process while a debtor in the bankruptcy cases.  This type of testimony is prohibited.  *See United States v. Morris*, 576 F.3d 661, 675 (7th Cir. 2009) ("It must be clear from the expert's testimony that he was merely identifying an inference that might be drawn from the circumstances . . . and was not purporting to express an opinion [about] the defendant's actual [thought process]." (internal quotation and citation omitted)).

In short, the court denies the government's motion to exclude all expert legal testimony nominated by Mr. Lindemuth's expert disclosure.  But, the court expects Mr. Lindemuth's expert—assuming Mr. Lindemuth provides a full and proper disclosure of the kind required by Rule 16—to stay within the boundaries established by *Specht* and applied in *Boardwalk Apartments*.  The court trusts that the preliminary views expressed in this order will help the parties develop the expert process.

## III.     Conclusion

In sum, the court concludes that Mr. Lindemuth's Disclosure of Expert Testimony is inadequate and untimely.  But, striking that Designation of Expert Witness and Offer of Proof (Doc. 100) or excluding the putative expert's testimony altogether is too heavy of a sanction.  The court also concludes that Mr. Sader does not have a disqualifying conflict of interest.  For these reasons, the court denies the government's motions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion to Strike (Doc. 102) is denied.

13

**IT IS FURTHER ORDERED THAT** the government's Motion in Limine (Doc. 103) is denied.

**IT IS FURTHER ORDERED THAT** Mr. Lindemuth provide the government a proper written summary of his expert's opinions with the bases and reasons for those opinions on or before **November 27, 2017**.

**IT IS SO ORDERED.**

**Dated this 17th day of November, 2017, at Topeka, Kansas.**

                                             **s/ Daniel D. Crabtree**
                                             **Daniel D. Crabtree**
                                             **United States District Judge**